**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY, | Civil Action No.: 2:17-cv-00820 |
| Plaintiff, | |
| v. | **OPINION** |
| ANTHONY GUERRIERO, | |
| Defendant. | |

**CECCHI, District Judge.**

## I.   INTRODUCTION

This matter comes before the Court on Plaintiff Ace American Insurance Company's ("Plaintiff") motion to compel arbitration of Defendant Anthony Guerriero ("Defendant") (ECF No. 2-1 ("Mot. to Compel")) and Defendant's cross-motion to dismiss Plaintiff's complaint and opposition to the motion to compel arbitration (ECF No. 18-1 ("Mot. to Dismiss")). The Court held oral argument on this matter on August 16, 2017 ("Tr."). For the reasons set forth below, Plaintiff's motion is GRANTED, Defendant's motion is DENIED, and Defendant is hereby ENJOINED from proceeding with the state court action in the New Jersey Superior Court, L-488-17, pending the outcome of the arbitration proceedings.

## II.   BACKGROUND

The parties have submitted briefs, declarations, and exhibits, reflecting the following factual background. Plaintiff filed its initial complaint on February 7, 2017. (ECF No. 1-1 ("Cmpl.")). In its initial complaint, Plaintiff claims it has been "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." (*Id.* ¶ 21). Plaintiff asserts that on August 7, 2009, Defendant received an offer of employment in the ACE

Private Risk Services division of ACE American Insurance Company. (ECF No. 2-2 ("Pltf. Cert.") Exhibit B). Plaintiff memorialized Defendant's offer of employment in a letter, which Defendant signed on August 13, 2009. (*Id.*).

Defendant's offer letter references a number of documents, including an "Employment Dispute Arbitration Policy" (the "Arbitration Policy"). (*Id.*). More specifically, the offer letter states: "[a]ttached are documents with important information. Please read each form and complete those documents necessary and bring with you on your first date of employment: . . . [the Arbitration Policy]." (*Id.*). The offer letter also states that a copy of the Arbitration Policy is attached. (*Id.*). Plaintiff alleges that Defendant received "a copy of the [Arbitration Policy]," although Defendant's personnel file does not presently contain a copy of the Arbitration Policy. (Cmpl. ¶¶ 9–10).

Plaintiff also alleges that Defendant "signed and returned" an Arbitration Agreement. (*Id.* ¶ 10). Plaintiff submitted a copy of Defendant's signed Arbitration Agreement, dated August 31, 2009, to the Court. (Pltf. Cert. Exhibit C). The Arbitration Agreement states:

> I agree that, in the event I have any employment related legal claims, I will submit them to final and binding neutral third-party arbitration, in accordance with the ACE [Arbitration Policy] recited above, which is made a part of this agreement. I understand that this agreement means that I cannot bring any employment related claim in court and that I waive my right to a jury trial for such claims.

(*Id.*). Plaintiff also explains in a sworn certification:

> Upon entering into employment, an ACE employee receives with his/her employment offer the [Arbitration Policy], which consists of a two-page statement of policy followed by a signature page designated "Arbitration Agreement." The employee signs the third-page and is supposed to return the entire document to the Human Resources Department . . . . This is ACE's uniform practice for onboarding employees, and it has been the practice for more than 10 years.

(*Id.* ¶ 4). In June 2016, Plaintiff claims that "shortly after the acquisition by [Plaintiff's] parent corporation . . . [Defendant] was laid off." (Cmpl. ¶ 6).

2

Defendant, however, contends that he never received the Arbitration Policy with the Arbitration Agreement. (Mot. to Dismiss at 3). Defendant further claims he "was not told that he could take the [Arbitration Agreement] home to review," was not advised to "discuss [it] with an attorney," and was not given a copy of his signed Arbitration Agreement. (*Id.* at 3–4). Defendant attests that his layoff resulted from reporting the destruction of certain materials in violation of a litigation hold notice. (*Id.* at 4–5). Following his termination, Defendant retained counsel. (*Id.* at 5).

In November 2016, Defendant's counsel sent Plaintiff "a demand letter . . . enclosing a draft complaint and demand for jury trial." (Mot. to Compel at 4). "The draft complaint allege[d] that [Plaintiff] violated the New Jersey [Conscientious Employee Protection Act ("CEPA")], when it terminated [Defendant's] employment for objecting to certain 'unlawful' management practices . . . . [and] invaded his privacy by intrud[ing] upon his seclusion." (*Id.*).

Over the next two months, Plaintiff and Defendant engaged in settlement discussions. (Mot. to Dismiss at 5). During these settlement discussions, Plaintiff made Defendant aware that he had an obligation to bring his claims to arbitration. (*Id.*). Defendant sought what he termed "the full arbitration agreement," "any updates to that agreement," and "the original signature page." (ECF No. 20-2 (the "Email") at 2). Plaintiff provided Defendant with a copy of the Arbitration Policy and Arbitration Agreement. (*Id.* at 3).

On January 27, 2017, Defendant's counsel sent Plaintiff's counsel an email which states, "[a]s a courtesy, I'm reaching out to you one last time before we move forward with filing our complaint." (*Id.* at 1). On January 30, 2017, Plaintiff's counsel responded, asking whether "your client [is] interested in mediating his claim." (*Id.*). Plaintiff's counsel attests in a sworn declaration that on February 6, 2017, during a phone call with Defendant's counsel, Defendant's counsel

explicitly told Plaintiff's counsel that Defendant refused to arbitrate. (ECF No. 20-1 ("Pltf. Decl.") ¶ 5). Defendant attests in a sworn declaration that "[a]t no time prior to [Plaintiff's] filing of its petition did [Defendant] ever reject or acknowledge that an arbitration agreement had been signed." (ECF No. 18-2 ("Def. Decl.") ¶ 20). The parties agree that, also on February 6, 2017, Plaintiff rendered a settlement offer to Defendant. (Mot. to Dismiss at 5–6).

On February 7, 2017, Plaintiff filed a motion to compel arbitration in this Court. (Mot. to Compel). On February 8, 2017, Defendant filed an action in state court.[1] (Mot. to Dismiss at 6). After unsuccessful mediation ordered by this Court, on June 21, 2017, Defendant filed a cross-motion to dismiss Plaintiff's complaint and opposition to the motion to compel arbitration. (Id.). Although Plaintiff requested that the state court stay its action pending this Court's review, Plaintiff's request was denied. (ECF No. 22 at 2 ("Def. Counsel Letter")). On August 16, 2017, this Court heard oral argument on the parties' pending motions. Plaintiff and Defendant subsequently filed a number of submissions, which have been duly considered by the Court.[2]

## III.  LEGAL STANDARD

### A.  Subject Matter Jurisdiction

A court must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) if the court determines that it lacks subject-matter jurisdiction over a claim. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "Generally,

---

[1] Although Plaintiff also requested in its February 7, 2017 motion to compel arbitration that this Court enjoin Defendant from pursuing his claims against Plaintiff before the New Jersey Superior Court, Defendant filed its claims in state court on February 8, 2017, mooting Plaintiff's application for an injunction.

[2] The Court provided Defendant with an opportunity to submit a supplemental letter brief by August 23, 2017, concerning whether this Court may enjoin the state court proceeding or the parties therein, but Defendant did not do so.

4

where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *The Connelly Firm, P.C. v. U.S. Dep't of the Treasury*, No. 15-2695, 2016 WL 1559299, at *2 (D.N.J. Apr. 18, 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

The first step in evaluating a 12(b)(1) motion is determining whether the 12(b)(1) motion presents a facial attack or a factual attack. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014). For facial attacks, "the court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). For factual attacks, however:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction[, i.e.,] its very power to hear the case[,] there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.*; *see also Hood v. Mercer-Bucks Orthopaedics*, No. 14-3427, 2014 WL 5465879, at *3 (D.N.J. Oct. 28, 2014) (holding that for factual attacks, courts are permitted "to weigh and consider facts 'outside the pleadings' to decide whether subject matter jurisdiction is proper" (citations omitted)).

### 1. Amount in Controversy

To properly invoke subject matter jurisdiction under 28 U.S.C. § 1332(a), a plaintiff must "show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000." *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010). The plaintiff must affirmatively plead the amount in controversy on the face of the complaint. *See Gray v. Occidental Life Ins. Co. of Cal.*, 387 F.2d 935, 937 (3d

5

Cir. 1968). The court must decide the amount in controversy from the complaint itself, unless it appears or is shown that the amount stated in the complaint is not claimed in good faith. *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961). However, the court should not consider in its jurisdictional inquiry the legal sufficiency of the claims alleged, but can dismiss the case only if there is a legal certainty that the plaintiff cannot recover more than the required amount in controversy. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997).

### 2.     Standing

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), because standing is a matter of jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). One key aspect of this case-or-controversy requirement is standing. *Id.* "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Aichele*, 757 F.3d at 360 (alteration in original) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

To establish standing, a plaintiff must satisfy a three-part test, showing: "(1) an 'injury in fact,' i.e., an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, i.e., traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court." *Nat'l Collegiate Athletic Ass'n v. Governor of N.J.*, 730 F.3d 208, 218 (3d Cir. 2013) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

### B. Arbitration

#### 1. The Presumption of Arbitrability

There is a strong federal policy in favor of arbitration rooted in the Federal Arbitration Act ("FAA"). *See, e.g., Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177–78 (3d Cir. 2010). Indeed, the "[FAA] reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (citations omitted). In considering the validity of an arbitration agreement, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). As such, a motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960).

#### 2. Motion to Compel Arbitration

Even in light of the strong federal presumption of arbitrability, arbitration is "strictly a matter of contract," and therefore state law is applied. *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 441, 444 (3d Cir. 1999). "If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Id.* at 444. Thus, in deciding whether a party may be compelled to arbitrate under the FAA, a court must first consider "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (citations omitted).

As to the first consideration, a district court "must initially decide whether the determination is made under [Federal Rule of Civil Procedure] 12(b)(6) or 56." *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Rule 12(b)(6) standard is appropriate where "it is apparent, based on the 'face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause.'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (citations omitted).

The Rule 56 standard is appropriate where: (1) "'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate," or (2) "the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Id.* at 774. Summary judgment under Rule 56 is appropriate if the record demonstrates that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

### C.    All Writs Act

"The All Writs Act empowers district courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 369 F.3d 293, 305 (3d Cir. 2004) (citing 28 U.S.C. § 1651); *Larson v. Sprint Nextel Corp.*, No. 07-5325, 2010 WL 3312033, at *2 (D.N.J. Aug. 18, 2010) (same). "The authority the All Writs Act imparts to district

8

courts is limited, however, by the Anti-Injunction Act, which prohibits injunctions 'to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *In re Diet Drugs*, 369 F.3d at 305 (citing 28 U.S.C. § 2283). "The two statutes act in concert, and '[i]f an injunction falls within one of [the Anti-Injunction Act's] three exceptions, the All-Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings.'" *Id.* (alterations in original) (citations omitted). "These exceptions 'are narrow and are "not [to] be enlarged by loose statutory construction."'" *Id.* (alteration in original) (citations omitted).

## IV.  DISCUSSION

### A.  Subject Matter Jurisdiction

#### 1.  Amount in Controversy

Here, Defendant does not challenge the parties' diversity.  Rather, Defendant facially challenges the Court's jurisdiction, arguing that Plaintiff's complaint insufficiently supports a finding that the amount in controversy exceeds $75,000.[3]  (Tr. 7:11–13 ("[I]n the pleadings [the amount in controversy is] not sufficiently pleaded for purposes of establishing the threshold.")).  Defendant asserts that the "sole basis for the jurisdictional amount is expressly drawn from ongoing settlement discussions," in violation of Federal Rule of Evidence 408, and therefore subject matter jurisdiction is lacking.  (Mot. to Dismiss at 9).

Plaintiff, however, states in its complaint that Defendant "was a highly compensated executive at ACE, and lost wages alleged by his attorney and his settlement demand exceeds

---

[3] The Court acknowledges Defendant's argument that Plaintiff's complaint and petition was initially only partially verified.  On August 22, 2017, Plaintiff filed a supplemental verification, rendering Plaintiff's complaint and petition fully verified.  (ECF No. 37).

$75,000." (Cmpl. ¶ 4). Setting aside Plaintiff's reference to Defendant's settlement demand, Plaintiff has still affirmatively pled the amount in controversy on the face of its complaint, referencing both Defendant's compensation and lost wages alleged by his attorney in excess of $75,000. *See Gray*, 387 F.2d at 937. Because the Court does not find that this claim was made in bad faith, it "can dismiss the case only if there is a legal certainty that the [defendant] cannot recover more than" the required amount in controversy. *Suber*, 104 F.3d at 583. Defendant neither provides any evidence that his damages are limited to $75,000, nor does he proffer that they should be. In fact, during oral argument, Defendant's counsel explicitly stated that he was not prepared to stipulate that the amount in controversy is $75,000 or less. (Tr. 7:14–18).

Further, courts may consider "settlement demands to determine whether plaintiff's claims meet the amount in controversy requirement." *Mitchell v. W. Union*, No. 06-949, 2007 WL 4440885, at *1 n.2 (D.N.J. Dec. 18, 2007). Although Defendant attempts to distinguish *Mitchell* on the basis that *Mitchell* involved *removal* to federal court, the question of whether the federal court has jurisdiction under 28 U.S.C. § 1332(a) is the same. As such, the Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

### 2. Standing

The Court treats Defendant's cross-motion to dismiss for lack of standing as factual, rather than facial, because Defendant argues that he did not refuse to arbitrate prior to Plaintiff filing its complaint. *See PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1067 (3d Cir. 1995) (holding that "it is doubtful that a petition to compel arbitration filed before the 'adverse' party has refused arbitration would present an Article III court with a justiciable case or controversy in the first instance"). The Court is therefore entitled to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. Even in "the existence of

disputed material facts," if the Court finds Plaintiff has shown by a preponderance of the evidence that Defendant refused to arbitrate, the Court may find that subject matter jurisdiction is proper. *See id.*

Plaintiff contends that prior to the filing of its complaint, Defendant unequivocally refused to arbitrate. (Pltf. Decl. ¶ 5). By contrast, Defendant maintains that "prior to [Plaintiff's] filing of the petition, [Defendant] never refused to arbitrate." (Mot. to Dismiss at 12).

In support of Plaintiff's contention, Plaintiff submitted a sworn declaration, under the penalty of perjury, that "[o]n February 6, 2017, [Plaintiff's counsel] had a telephone conversation with [Defendant's counsel] during which [Defendant's counsel] stated that [Defendant] would not agree to arbitrate his claims." (Pltf. Decl. ¶ 5). This is consistent with Plaintiff's complaint, which states that "[t]o date, [Defendant] has stated that he will not abide by his obligation to arbitrate." (Cmpl. ¶ 23). These facts would constitute an unequivocal refusal to arbitrate.

Additional circumstances lend credence to Plaintiff's version of events, including Defendant's serving of a draft complaint on Plaintiff in November 2016, (*id.* ¶ 3), and Defendant's sending of an email on January 27, 2017 stating that "I'm reaching out to you one last time before we move forward with filing our complaint." (Email at 1). These facts shed light on the circumstances surrounding this matter, including, by Defendant's own admission, his unwillingness to acknowledge arbitration as the appropriate avenue to resolve his claims, (Def. Decl. ¶ 20), and support a finding that there was an unequivocal refusal to arbitrate. To date, Defendant continues to pursue litigation, as opposed to arbitration, having filed a complaint in state court, one day after Plaintiff filed its complaint before this federal Court.

Moreover, the circumstances under which Defendant's counsel denied there was a refusal to arbitrate undermine his contention. First, Defendant's counsel submitted a sworn declaration

with Defendant's cross-motion to dismiss, stating that "[a]t no time prior to [Plaintiff's] filing of its petition did [Defendant's counsel] ever reject or acknowledge that an arbitration agreement had been signed by [Defendant]." (ECF No. 18-3 ("Def. Counsel Decl.") ¶ 15; *see also* Def. Decl. ¶ 20 (same)). This statement is not inconsistent with Plaintiff's averment, as it does not squarely acknowledge whether Defendant refused to arbitrate.

Second, even when confronted with Plaintiff's counsel's sworn declaration that on February 6, 2017, Defendant unequivocally refused to arbitrate, Defendant submitted no additional declaration in support of Defendant's cross-motion to dismiss Plaintiff's complaint. It was not until Defendant's counsel appeared before the Court during oral argument that Defendant's counsel more particularly denied that a refusal to arbitrate took place. (Tr. 16:13–14; 29:18–20; 88:3–20).

Weighing the evidence before it, the Court finds that Plaintiff has shown by a preponderance of the evidence that Defendant refused to arbitrate. Accordingly, the Court finds that Plaintiff had standing to file its complaint on February 7, 2017. As such, the Court finds subject matter jurisdiction is proper.

**B.    Arbitration**

**1.    Standard of Review**

As a threshold matter, the Court must determine which standard of review governs Plaintiff's motion. In this case, although the existence of an agreement to arbitrate is apparent from the face of Plaintiff's complaint, Defendant comes forth with more than a mere "naked assertion" that such an agreement did not exist. Accordingly, the Rule 56 standard governs. Under Rule 56:

[A] "court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party asserting that there is a genuine dispute of material fact must support that assertion by "citing to particular parts of . . . the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." In evaluating the motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."

*Guidotti*, 716 F.3d at 772 (citations omitted). The parties put forth the relevant documents for the Court's consideration, therefore, the Court will consider Plaintiff's motion on the existing record.

### 2. Validity and Scope of the Arbitration Agreement

Defendant appears to argue that the Arbitration Agreement is invalid and that his claims are outside the scope of the Arbitration Agreement. For the reasons set forth below, the Court finds that the Arbitration Agreement is valid, Defendant's claims are within the scope of the Arbitration Agreement, and therefore the Arbitration Agreement is enforceable.

Defendant argues the Arbitration Agreement is invalid for the following reasons: (1) Plaintiff offers an agreement with missing pages and fails to explain the absence of a complete agreement; and (2) there is a dispute as to whether Defendant knowingly and voluntarily waived his right to bring an action for CEPA claims in court. Defendant also argues that the Arbitration Agreement does not contain a statutory waiver for CEPA claims, rendering his claims outside of its scope. The Court addresses each of these arguments in turn.

### a) Complete Agreement

Defendant first argues that the Arbitration Agreement is invalid because Plaintiff fails to provide the original copy of the Arbitration Policy Defendant purportedly received or the original copy of the Arbitration Agreement Defendant signed, and does not explain such failure.

Although New Jersey courts have held "that the proponent of an arbitration agreement bears the burden to prove its existence," the proponent is "not required to produce the complete

13

original document that [the opponent] signed in order to prove the contents of their agreement."

*Patterson v. Ladenburg Thalmann & Co.*, No. A-2448-14T2, 2015 WL 9957830, at \*4 (N.J. Super. Ct. App. Div. Feb. 4, 2016) (citing N.J.R.E. 1004 ("The original is not required and other evidence of the contents of a writing or photograph is admissible if . . . originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith.")). *Accord* Fed. R. Evid. 1004. If a party is able to "present sufficient, competent evidence of an arbitration agreement," the Court may find validity even without the original copy. *See Patterson*, 2015 WL 9957830, at \*4.

Here, Plaintiff has submitted a copy of Defendant's signed Arbitration Agreement, as well as two copies of Plaintiff's Arbitration Policy from other employee personnel files. (Pltf. Cert. Exhibit A, C). The copies of Plaintiff's Arbitration Policy are followed by signed Arbitration Agreements identical to the Arbitration Agreement signed by Defendant. (*Id.*). Further, the Arbitration Agreements are dated April 17, 2009 and September 21, 2009, spanning the range inclusive of when Defendant signed his Arbitration Agreement on August 31, 2009. (*Id.*). The April and September Arbitration Policies are identical.[4]

Plaintiff also submitted a sworn certification, "based on [] personal knowledge," which states that:

> Upon entering into employment, an ACE employee receives with his/her employment offer the [Arbitration Policy], which consists of a two-page statement of policy followed by a signature page designated "Arbitration Agreement." The employee signs the third-page and is supposed to return the entire document to the

---

[4] For this reason, the Court finds Defendant's argument about potential amendment or modification to the Arbitration Policy without merit. Plaintiff has set forth two identical Arbitration Policies spanning the dates during which Defendant signed the Arbitration Agreement. (Pltf. Cert. Exhibit A, C). The Arbitration Agreements appended to these Arbitration Policies are also identical. (*Id.*). The Court finds that this evidence sufficiently demonstrates the contents of the Arbitration Policy as signed by Defendant on August 31, 2009. *See Patterson*, 2015 WL 9957830, at \*4–5. *Accord* Fed. R. Evid. 406.

14

Human Resources Department . . . . This is ACE's uniform practice for onboarding employees, and it has been the practice for more than 10 years.

(*Id.* ¶ 4).

Having provided the Court with a copy of Defendant's signed Arbitration Agreement, two identical copies of Plaintiff's Arbitration Policy, followed by identical Arbitration Agreements that would have been in effect approximately four months before and one month after Defendant's employment, the Court finds Plaintiff has sufficiently demonstrated the contents of the Arbitration Agreement and Arbitration Policy. *See Patterson*, 2015 WL 9957830, at *1, 4–5 (finding that, if the affiant were to have attested to his personal knowledge in his affidavit, his testimony regarding the company's recordkeeping policies, combined with the submission of a complete, blank fifteen-page agreement from "the relevant time period" with an identical signature page to the plaintiff's signed signature page, would be sufficient to prove the contents of the agreement). *Accord* Fed. R. Evid. 406.

### b) Knowing and Voluntary Waiver

Defendant next argues that he did not knowingly and voluntarily waive his right to bring an action for CEPA claims in court. In support of this argument, Defendant states "there is no evidence whatsoever that [Defendant]" received a copy of the Arbitration Policy. (Mot. to Dismiss at 21). Defendant also argues that, even if he was presented with a copy of the Arbitration Policy, his waiver was not knowing and voluntary because he was not provided with an opportunity to review it or "consult with an attorney before signing it." (ECF No. 21 ("Def. Reply") at 11).

"To be enforceable, an arbitration agreement 'must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim. Generally, we determine a written agreement's validity by considering the intentions of the parties as reflected in the four corners of the written instrument.'" *Forsyth v. First Trenton Indem. Co.*, No. A-5080-08T2, 2010 WL

2195996, at *6 (N.J. Super. Ct. App. Div. May 28, 2010) (quoting *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1104 (N.J. 2003)). "As a matter of both federal and state law, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Fave v. Neiman Marcus Grp.*, No. A-1805-13T2, 2014 WL 1884337, at *4 (N.J. Super. Ct. App. Div. May 13, 2014) (citations omitted). As such, "basic contract principles [are used] to interpret an arbitration clause," including the principle that "[f]ailing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading." *Id.* at *4–5; *see also Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 690 (N.J. 2010) ("When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected.").

Further, "employers need not 'negotiate individual agreements with their entire workforce to implement a company-wide arbitration policy[,]' and an employee's signature on the pre-printed agreement is sufficient to effectuate such a policy." *Forsyth*, 2010 WL 2195996, at *6 (quoting *Leodori*, 814 A.2d at 1107). "Likewise, the accompanying acknowledgement form 'need not recite that policy verbatim so long as the form refers specifically to arbitration in a manner indicating an employee's assent, and the policy is described more fully in an accompanying handbook or in another document *known to the employee*.'" *Id.* (emphasis added) (quoting *Leodori*, 814 A.2d at 1107–08).

Applying basic contract principles, the Court finds Defendant's arguments without merit. First, the Arbitration Agreement at issue makes explicit reference to the "[Arbitration Policy] recited above, which is made a part of this agreement." (Pltf. Cert. Exhibit C). Defendant signed this Arbitration Agreement on August 31, 2009. (*Id.*). Second, Defendant's offer letter, which Defendant signed on August 13, 2009, explicitly references the Arbitration Policy on both pages

16

two and three. (*Id.* Exhibit B at 2, 3 ("Attached are documents with important information. Please read each form and complete those documents necessary and bring with you on your first date of employment: . . . [the Arbitration Policy].")).

Despite Defendant's argument that "there is no evidence whatsoever that [Defendant]" received a copy of the Arbitration Policy, Defendant signed two separate documents, one acknowledging the attachment of the Arbitration Policy with Defendant's offer letter, and one acknowledging Defendant's agreement to be bound by the Arbitration Agreement, which explicitly makes part of the Arbitration Agreement the Arbitration Policy. (*Id.* Exhibit B, C). The Arbitration Policy was undoubtedly a document "known to the employee," and therefore there is no requirement that Plaintiff provide evidence Defendant received it. *See Young v. Prudential Ins. Co. of Am., Inc.*, 688 A.2d 1069, 1076–77 (N.J. Super. Ct. App. Div. 1997) (finding that although plaintiff claimed he was "never provided with the . . . rules and regulations referred to by the arbitration clause," it was "undisputed that plaintiff signed the [arbitration agreement]" and "agreed to be bound by its terms").

Defendant's argument that his waiver was not knowing and voluntary because even if he was provided with a copy of the Arbitration Policy, he was not provided with an opportunity to review it or "consult with an attorney before signing it," likewise fails. *Fave*, 2014 WL 1884337, at *5 (holding that plaintiff knowingly and voluntarily signed an arbitration agreement despite plaintiff's contentions that she was never told what rights she was giving up and was never asked to consult with a lawyer before signing the arbitration agreement). Because "[f]ailing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading," and Defendant provides no accusation of fraud or misconduct here, the Court finds

that Defendant's waiver of his CEPA claims was knowing and voluntary. *See id.* (citations omitted).

### c) Statutory Waiver of CEPA Claims

Defendant's final argument is that the Arbitration Agreement does not encompass a statutory waiver of CEPA claims because the Arbitration Agreement refers only to "employment related legal claims." (Mot. to Dismiss at 21). However, the Arbitration Agreement explicitly incorporates by reference the Arbitration Policy, which states, "[t]his policy covers all employment-related disagreements and problems that concern a right, privilege or interest recognized by applicable law" including "any other federal, state or local statute, regulation, ordinance or common law doctrine, regarding unfair competition, employment discrimination, retaliation, whistle blowing, wage and hour matters, conditions of employment or termination of employment." (Pltf. Cert. Exhibit A). Further, "[t]he policy also specifically covers state statutory whistleblower claims such as the New Jersey Conscientious Employee Protection Act." (*Id.*). Having found that there is no genuine dispute that Defendant knowingly and voluntarily entered into a valid Arbitration Agreement, which explicitly incorporates the Arbitration Policy, the Court finds that Defendant's claims are covered by the Arbitration Agreement and therefore that the Arbitration Agreement is enforceable.

### C. First-Filed Rule

The first-filed suit between Plaintiff and Defendant was the federal court action before this Court. "[T]he first-filed rule ordinarily counsels deference to the suit that was filed first, when two lawsuits involving the same issues and parties are pending in separate federal district courts." *Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.,* 502 F. App'x 201, 205 (3d Cir. 2012). Defendant, however, argues that deviation from the first-

filed rule is appropriate because Plaintiff acted in bad faith, and therefore this Court should give deference to Defendant's second-filed suit in state court. *See EEOC v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988) (holding that the first-filed rule need not be followed where there are "rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping").

Although case law in this Circuit suggests that the first-filed rule and its exceptions do not apply between federal and state court actions,[5] to the extent the first-filed rule does apply, the Court finds that deviation from the first-filed rule is not warranted. Although the Court recognizes that the parties were engaged in settlement discussions at the time Plaintiff filed its complaint, it does not find that Plaintiff acted in bad faith. *See Zelenkofske Axelrod Consulting, L.L.C. v. Stevenson*, No. 99-3508, 1999 WL 592399, at *3 (E.D. Pa. Aug. 5, 1999) ("A party by virtue of engaging in settlement discussions is not obligated to provide notice to his adversary that he has decided to sue to allow the adversary to commence suit first.").

Rather, courts in this Circuit have reasoned that a party may act in bad faith when "one party set[s] a deadline by which the dispute [i]s to be resolved via negotiation before recourse to

---

[5] *See Morris Indus., Inc. v. Trident Steel Corp.*, No. 10-3462, 2010 WL 5169007, at *3 (D.N.J. Dec. 14, 2010) ("The first-to-file rule only 'allows a federal district court to stay a proceeding where another matter involving the same issues and parties is already pending before another *district court*.'" (emphasis in original) (citations omitted)); *McGowan Builders, Inc. v. A. Zahner Co.*, No. 13-6508, 2014 WL 1343091, at *2 (D.N.J. Apr. 4, 2014) ("[T]he first-filed rule traditionally applies between federal courts of equal rank rather than between concurrent matters in federal and state courts."); *see also Sprout Retail, Inc. v. USConnect LLC*, No. 17-00135, 2017 WL 1351401, at *8 (D.N.J. Apr. 10, 2017) (holding that although "the underlying factual and legal issues in the federal action are identical as the ones raised in the [state] [a]ction[] and the parties in both cases are the same," the first-filed rule did not apply because "the previous case was filed in the state court" and the case at issue was a federal action), *appeal docketed*, No. 17-2060 (3d Cir. May 12, 2017); *In re Tarragon Corp.*, No. 09-10555, 2009 WL 2244598, at *8 (Bankr. D.N.J. July 27, 2009) ("The 'first-filed' doctrine 'does not apply when similar actions are pending concurrently in federal and state court, as the rule "encourages sound judicial administration and promotes comity amo[ng] federal courts of equal rank."'" (citations omitted)).

19

litigation, and . . . the opposing party file[s] suit before the expiration of the deadline." *Sinclair Cattle Co. v. Ward*, 80 F. Supp. 3d 553, 561 (M.D. Pa. 2015) (citing cases).

Here, Plaintiff did not provide Defendant with a deadline on which Plaintiff's settlement offer would expire. (Def. Counsel Decl. ¶ 11 ("The offer did not have a deadline [on] which the offer expired.")). Further, on February 6, 2017, Plaintiff's counsel "had a telephone conversation with [Defendant's counsel] during which [Defendant's counsel] stated that [Defendant] would not agree to arbitrate his claims." (Pltf. Decl. ¶ 5). Based on the foregoing, even if the first-filed rule applied between federal and state courts, the Court finds that Plaintiff did not act in bad faith by filing its complaint and therefore, the exception to the first-filed rule does not apply.

### D.    All Writs Act

The Court must acknowledge the duplicative state court action currently progressing between Plaintiff and Defendant. As discussed previously, the Court has authority to enjoin state court actions if expressly authorized by statute, where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. *See In re Diet Drugs*, 369 F.3d at 305.

"[A]n injunction is necessary in aid of a court's jurisdiction only if 'some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *Id.* at 306 (alteration in original) (citations omitted). "Courts in the Third Circuit have found that an injunction of a pending state court action pending arbitration falls under the 'necessary in aid of its jurisdiction' exception, because the injunction is necessary to aid the court's exercise of its jurisdiction over the petition to compel arbitration." *JPMorgan Chase & Co. v. Custer*, No. 15-6288, 2016 WL 927339, at *7 (D.N.J. Mar. 10, 2016) ("Permitting Respondent to proceed in state court could potentially 'eviscerate the arbitration process and make

it a hollow formality, with needless expense to all concerned.'" (citations omitted)); *Home Buyers Warranty Corp. v. Jones*, No. 15-324, 2016 WL 3457006, at *2 (D. Del. June 21, 2016) (same).

Here, permitting Defendant to proceed in state court may render arbitration futile, and cause the parties to incur unnecessary costs associated with duplicative litigation. *See JPMorgan Chase*, 2016 WL 927339, at *7; *Home Buyers Warranty*, 2016 WL 3457006, at *2. Therefore, the Court finds that the "necessary in aid of its jurisdiction" exception applies.

Moreover, "[t]he 'protect or effectuate its judgments' exception, known as the 'relitigation exception,' is 'founded in the well-recognized concepts of *res judicata* and collateral estoppel.'" *In re Diet Drugs*, 369 F.3d at 305 (citations omitted). "The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *Id.* (citations omitted).

The Court has been presented with a number of issues arising between Plaintiff and Defendant. The parties are admittedly litigating these precise issues in two different forums. (Tr. 3:17–21; 73:18–21; 78:13–14; 83:11–13). Having decided the issues discussed herein, the Court finds the "relitigation exception" applies. As such, Defendant is enjoined from proceeding with the state court action pending the outcome of the arbitration proceedings.

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to compel arbitration is granted and Defendant's cross-motion to dismiss is denied. Further, Defendant is hereby enjoined from proceeding with the state court action in the New Jersey Superior Court, L-488-17, pending the outcome of the arbitration proceedings. An appropriate order follows this opinion.

DATED: August 24, 2017                          *s/Claire C. Cecchi*
                                                                          **CLAIRE C. CECCHI, U.S.D.J.**